Good afternoon. Two cases today on the panel. The first is 2012-1196, Ashley Furniture v. U.S. Mr. Russell. Good morning. May it please the Court, Kevin Russell of Goldstein and Russell on behalf of Appellant Ashley Furniture Industries. Since the CIT handed down its decision in this case, much of the dispute between the parties has either been resolved or rendered mostly irrelevant by this Court's subsequent decision in P.S. Shea, Sydney. In that case, this Court rejected the only reason the government has ever given for denying Ashley a distribution in this case, which is the government's position that, if properly construed, the Byrd Amendment permits a distribution only if a company, one, provides active support for the petition by answering an ITC questionnaire, and, in addition, two, expresses abstract support for the petition by checking the appropriate box on the ITC questionnaire. Okay, so your client checked the opposed box. That's correct. So how does Shea, Sydney help you? In two ways. One is, let me just state the basic holding in Shea, Sydney, as I understand it, which is that the Court construed the word support in the statute to mean practical support in the form of answering an ITC questionnaire, unless the party takes additional actions that negate that support. Why would they have gone through the exercise of pointing out that they had supported it in the preliminary and only took no action in the final, and pointing out that the reason that supporting in the preliminary is helpful is because the government needs a 25% support response in order to proceed with the investigation? So I guess my question is, if the way that you just expressed the holding was correct, it seems like Judge Rayna included an awful lot of dicta in this opinion. Well, they did include that fact, which was a fact in there. I would say, if you want to know what the holding is, there's a part of the decision that says we hold, and it says just what I said. Let's come back to that. It says that you have submitted your questionnaire, which your client has, but you took no other action, probative of opposition. Now, you said opposed twice. Right, and I think that's... You're saying that's not action. I'm saying that's not action, but I do agree that's the central question in this case. But if there's some ambiguity, as you agree with Judge Clevenger, as to what the majority meant by action, if you read the rest of it, of the opinion, it's at least clear to me what Judge Rayna, what the majority was talking about, was this guy checked support in the first questionnaire and checked no position afterwards. So given the combination of those two, including that they never checked opposed, he's entitled. Is that not a fair and reasonable reading of this holding? I don't think so, if you read the opinion as a whole. To take the initial question of did it matter that they initially marked the support box, the court answered the question of what does support mean by looking at the statutory text and said, look, you can read this to mean two things. It can mean abstract support or practical support. We read it to mean practical support. The reason Shea Sidney... We're exactly, I know you're giving us a version of the opinion. We've all got Shea Sidney in front of us. Why don't you point to a language where it supports what you just now said. Sure. So this is at page 1380 in the West Reporter. It says, we begin with the language, we begin with the question of whether the language is 1675 C.D. Reasonably susceptible. Reasonably susceptible. It acknowledges that the government says that, so the ITC and customs contend that it requires not just submission of letters and responses, but also the inclusion of an affirmative declaration of support. But the statute's plain language does not require producers to indicate an expression of support other than through a letter or by filing a questionnaire response. It states that supporting producers are those who submit letters or responses. And then the court goes on to explain how submitting a response provides practical assistance to the investigation. And in the next paragraph it says, to the extent there was any ambiguity, it was resolved by the limiting construction of the Byrd Amendment, where the court, and this is a couple paragraphs down, talks about the narrowing construction of the N.I.S.A. K.F. And so that, once you get over to page 1381, I think this is where it's critical, that the court says, in both S.K.F. and in this case, we have construed the Byrd Amendment not to reward or penalize abstract expression by itself. But that is precisely what the government's interpretation in this case does. The only reason Ashley was denied a distribution is because of its abstract expression, because it checked the wrong box. In addition, there are very good practical reasons not to read the statute to limit distributions to people who don't check the opposed box. And that is, the government itself argues that it's a critical piece of data for the government's implementation of the statute that it get honest answers to that support question. And given that, it's implausible that Congress would have intended the Byrd Amendment to provide a massive financial disincentive to giving honest answers to that question. We're talking about millions of dollars that Ashley was denied if it gave an honest answer and said, we oppose, which it could have gotten if it gave a dishonest answer and said, fine, we support. I don't know of any other area of the law in which Congress has created such a financial disincentive to getting accurate information that is sent off. I mean, you may be right in terms of the wrong policy, but it's my reading of the statute that that's what Senator Byrd and the Senate decided to do. Well, I do think that's consistent with what the court in Shafe-Sidney said, which was, we have read the statute in both Shafe-Sidney and SKF not to reward or penalize abstract expressions in itself. Do you think Shafe-Sidney stands for the proposition that even people who mark oppose get to share? Yeah. They do nothing other than oppose.  And that's what this court said in Shafe-Sidney was the difference between the two cases. There would have been no reason for this court. You're giving us your gloss, your interpretation of Shafe-Sidney, because these facts are really different. They took no action and had prior support, and you opposed. How do you reconcile the interpretation you're suggesting? What makes it hard for me to do what you want us to do is that it so directly contradicts the plain language of the statute that it makes it hard for me to accept that as a proper interpretation of Shafe-Sidney. The statute says, as you well know, that under the list of affected domestic producers, a list of persons that indicate support of the petition by letter. You didn't file a letter, right? No. That doesn't apply to you? No. Or through questionnaire response. Did you indicate support of the petition by questionnaire response? We did in the sense that this court read that letter. You checked the box that said oppose. It's really hard for me to say that is an indication of support through questionnaire response. But Shafe-Sidney didn't mark that it supported it either. But Shafe-Sidney called out in the opinion numerous times. They didn't say we hold, but it was clearly they're analyzing and deciding the case, reliance on the support check the first time and the not taking an opposition the second time. Neither of those, as Judge Moore pointed out, is your client. Well, I would respectfully suggest that although the court noted both of those facts, it wasn't the determinative factor. Certainly the court wasn't pre-deciding this case where there are different facts. Now, you're telling us that even if we accept your view that this one sentence says we hold is it and we can ignore all the other indications that show what that means, that still says, as Judge Klamberger I think started with, takes no other action probative of opposition. How is checking a box I oppose not probative of opposition? It's not action that's probative of opposition. And this court made very clear in the passage that I read to you that the constitutional avoidance principle that drove both SKF and Shafe-Sidney requires avoiding an interpretation of the statute that rewards or penalizes people based on abstract expression of their views on what is ultimately a question of significant public interest, of political controversy. It raises very real First Amendment questions which this court attempted to avoid. And it doesn't avoid that problem if you say that Shafe-Sidney can get a distribution  Do you think that we are precluded in this case from reaching that First Amendment question? I don't think you're precluded from it. I don't think you need to. And I think you should try to resolve it on statutory grounds first. Yeah, but you're suggesting a construction that seems to me directly at odds with the plain language of the statute. So if that is the case and I can't adopt that construction... Well, then if you're in that position, if you think that Shafe-Sidney gives you room to conclude that the statutory language requires you to mark the support box, then I do think you have to reach the constitutional question. And what's the problem for you? Is it not because if we reach the constitutional question and say SKF is limited to it makes it constitutional only in circumstances where it's applied to non-active opposers, then maybe that precludes the facial challenge, but we've got at least an as-applied challenge in this case because you're done. So your only way around that, if I understand your argument in the brief, is that because we're compelled to try to construe a statute so as to be constitutional, we should read the Byrd Amendment as allowing questionnaires. We should construe that as meaning just filing a questionnaire with sufficient support under the statute. Just to be clear, and if you take no other action to negate that support, no other action as the party did in SKF, that is our position, and if I could reserve the remainder of my time. All right. Now we've got three people arguing on your side, and we'll, I guess, run the clock for you, but we're not going to take responsibility for any of you if you run over your time. Customs is talking first. Is that the idea? Yes, Your Honor. And is your position different from the ITC? No, but we are both parties in the case. You're dividing up the argument just because both agencies alone come here and make an appearance. Same argument, right? It's largely the same argument. And then, so you're Mr. Parrish, or Mr. Gallagher? Mr. Gallagher. Mr. Parrish. So I'm clear I've just put 15 minutes on the clock, is that what you're saying? Why don't we time them individually, if we can do that. That way they take responsibility. May I please have the court, Your Honors? The court should affirm the CIT three-judge panel's decision that dismissed Ashley's complaints in this case. The court properly concluded that Ashley's complaint was inconsistent with the plain language of the statute, which doesn't provide for distributions to be made to parties that didn't support the relevant anti-dumping petition, and that these arguments... Well, what do you say to his argument about, let's take Shea Sidney first, and then NSK? Or SKS? Do you agree with his view, his reading of Shea Sidney, that it only requires active opposition, and there's no active opposition here? Well, there is no active opposition here, correct? There is the checking of the box that is opposing, and that is indicating opposition, as Judge Clevenger was referring and questioning of opposing counsel. But to start from the beginning, the court resolved these questions in SKF. The statute is plain on its face. It requires that the party have indicated support. The statute... Did SKF explicitly say that just filing a questionnaire, irrespective of whether you check the opposed box, is not not supported? The court limited the reading of the statutory language in a very minor way in footnote 26 of the decision to say that a party that did check the support box and has statutorily supported in the manner stated in the statute need to have actually participated fully... Checking the box is not enough. Why do you suppose that wouldn't be support? It wouldn't be support because the court was trying to ensure that the reading and the purpose that it characterized Congress having as the reason for the statute was that the parties were supporting, seeking a remedy for unfair... The court's not enough. Checking the box for support is not enough under SKF. But SKF says checking the support box plus filing the questionnaire is what you need, right? Correct. And here, where a party like Ashley has checked the opposed box in both instances, it's completely out of the realm of what the SKF decision has established as being what's required to be a supporter. How significant is checking the box? What would happen in SKF if SKF had checked the box as support but nonetheless had showed up at the hearings and behaved in a negative way? Would you have granted them ADP status? Well, it's an interesting question, Your Honor, because... What's the answer to it? The answer to it is probably one that the ITC counsel here is probably better prepared to answer than I would. But from the standpoint of the statute, it would probably be that the act of supporting through checking that box on the questionnaire would negate the possibility of the producer being treated as opposing for the purpose of... But how about the file center? I want to ask the ITC. One of the problems I have with the argument is that if you look at SKF, it was a narrow majority there, there were some dissenters, and at bottom one could fairly say, could he not, that ultimately the majority hung its hat on the fact that there was active, proactive opposition in lots of respects, suggesting, therefore, that in the absence of active opposition and simply the checking of the opposition button, there might indeed be constitutional problems. Why am I... I assume you disagree with that. Yes. Tell me why I'm wrong. Well, I disagree with that reading because it's inconsistent with the rationale that was underlying the finding the statute was constitutional. In doing that and applying the central Hudson test, the court was very clear that it had to find a way to explain why it was not overbroad when the statute provided this benefit not only to the petitioners but also to the supporters. And in following that analysis, the court explained the reason why, following this litigation analogy, that a party that opposed and a party that took no position were in a way similar to a defendant in a litigation context, and it was fair and appropriate for Congress in that instance to feel that it was appropriate to reward the petitioners and supporters but not those parties that opposed or took no position. But here's the problem. I mean, even SKF acknowledges that you have to be careful in construing the Byrd Amendment so as not to reward a mere abstract expression of speech because that would run into First Amendment problems. And so the problem is the construction you're advocating to me seems to run into First Amendment problems. How do I reconcile that? I don't think your construction is inconsistent with the statute. But I'm a little worried that if I allow that construction to stand, A, I've morphed Shea Sidney and SKF, I can't really reconcile them very well anyway, but if I did, you know, get through all of that, I'm worried that there is a First Amendment problem. So what do I do? Well, for one, the checking of the box isn't really abstract expression to begin with. What, because it involves a flick of the wrist? What? Well, because the question itself has a meaning and an express purpose in the context of these ITC investigations which preexisted the enactment of the Byrd Amendment. What is the express purpose? The purpose was to determine the level of support for the petition among other producers, which is a required factor that the ITC is going to look at in determining material injury. Wait, but it is true, is it not, that the ITC has proceeded with investigations even in cases where there were not 25% of petitioners who responded in favor? Correct. This question, as the Court mentioned in the Sur America Laminatis decision from 20 years ago, indicated it's just a factor. It was a factor that the ITC was required to consider. And because that was a factor that the ITC was required to consider, it was reasonable for Congress to use that. You're eating into his mouth pretty well. I'm sorry, I want to answer your question if I can. No, please, you're in the middle of answering the question. What I'm getting at, Your Honor, is that that question was one which, although it wasn't determinative of anything, and the Court noted as much in the Sur America Laminatis case, it was a factor that the ITC is required to consider for the purposes of determining material injury, among a million other factors. How is it not abstract speech to the people who are making it? The fact that I might vociferously oppose something and someone else might take action as a result of hearing my opposition doesn't mean my statement wasn't abstract speech. It's not abstract because in the same vein that the SKF Court looked at this, it's similar to a statement in signing on to a class action, saying that I agree with the petition. That would be filing a petition, right? That analogy doesn't hold. Just checking these boxes doesn't lock you in to anything at all. Signing on to a class action affirmatively takes an action that makes you a legal representative in a case, makes you involved in a very legal sense. But just checking the box that says support, it's kind of like passing a note, do you like me or not? It's certainly not identical, and I want to end my comments here so I don't eat too much into their time, but it's not identical and we're not saying it is, but it was viewed by the Court as similar enough to the activities in a litigation context of a party basically signing on and asking for the relief that's going to be provided to a class that this is a reasonable requirement in the context of what Congress was trying to do, which was to reward those parties who were actively seeking a remedy for unfair trade practices. I think just a couple of minutes. No, I'll stay with you. We're not going to penalize you. We'll just add it on to your friend's side, which may end up penalizing you, but in different respects. All right, why don't we go with Mr. Gallagher. Thank you, Your Honor. Can I ask two questions? First off, the 25%, 50% requirements in order to show that you're representing the industry, if those numbers are not achieved, can the Commission still go ahead with an investigation? No, Your Honor. That's a change, that's a Uruguay round change. When SurAmerica was decided, there was no specific numerical number for commerce. Commerce was an eye-beholder test, really. So that's why you've got the unique circumstance that you've got in SurAmerica. The 25% threshold, that's the minimum that you have to come in with. And the 50%, do you count the people who say no position? When you're doing the 50% calculation, are you calculating only the people, the output of the people who have said oppose and support? What about the people who said no position? 50% of those responding must respond in support. If somebody is responding, no position responding? They're counting as not supporting. Wait a minute, so the denominator... They're counting as not supporting. Yes, sir. So the denominator, I didn't understand that. 50% of the responders to commerce's polling question must affirmatively state that they support, that they want the petition to go forward. I mean, that's a little odd. I mean, that's the way the government construes it, but it seems the language of the statute says 50% of the production of the domestic-like product produced by that portion of the industry expressing support for or opposition to the petition. So I assumed it would be 50% of the number expressing support for or opposition to. But you're telling me you count the no support as in that denominator? You have to have 50% to go forward. If you have 50% opposition, then you can stop. I mean, that's... Yeah, but if you have 50% of what? 50% of the numbers of everybody responding, including those that checked no position? Yes, and it's weighted based on your representation of the domestic-like product.  So I asked the customers the question, what would happen in SKF if they had checked the box support but still appeared that the hearing had been carried on? Would you have granted them ADP status? When they came in banging their shoe on the table saying they oppose later, is that the scenario? Yeah. It's a fascinating question. Well, what's the answer? It would be hard for us to imagine that circumstance. However, yes, the statutory language seems to preclude the commission from exercising discretion in that particular... So if somebody came in and checked I support, and they filed their questionnaire, and then they came in with guns blazing, changed their mind, just like Sidney changed its mind, and just fought tooth and nail, you would still give them the money. That's different. They'd have to come in and make the arguments against having an order. And in the context of making those arguments, they would have to necessarily say that they were... I'm trying to find out exactly how important it is to check this box. So you say that you would have granted them ADP status even under our case laws. It comes up... I'm saying it comes up now after the two cases we're talking about. And they check I support, but they come in guns blazing, their practical action, and they actually become successful in fighting it. And you would still give them money. It's the way the reward construction that was established in FKF appears to... That appears to be what the result would be. That seems odd. It's hard to imagine the commission making that... You can't throw them out. Somebody comes in and says, I support. So you say, oh boy, I mean, you know, Temp and Roller Baron's going to support us. Isn't that great? They've got great lawyers. And they fill out all their questionnaires. And then they have a little change of heart because they get taken over by somebody else or something. They come in and they say, you know, we're in here. We've changed our mind. And they become very aggressive. If that occurred, Your Honor, I believe, and we haven't had that circumstance to my knowledge, but I believe that the commission... That sure makes the whole purpose of the verdict odd. Well, listen to your answer. It's Clevenger that makes it odd, but that's Senator Byrd's problem and not yours. I mean, the statute could have very easily... The statute refers to the persons who indicated support by letter or through questionnaire response. It could have easily said, and thereafter never changed their minds or expressed an opposite view. But they didn't. Maybe they should have. I mean, I assume they didn't contemplate the hypothetical. But maybe the answer ought to be maybe up to them and not up to you. Yes, Your Honor. Anything else? Because your time is up. No, Your Honor. I'll send the remainder of my time to Ms. Perry. Mr. Perry. Thank you, Your Honor. May it please the Court. What I'd like to do is three things. I'd like to, Judge Moore, return to your question because I think it's key. Judge Post, I'd like to explain to you why SKF, that discussion of facts, doesn't change the analysis. And I'd like to give you three reasons why I think their position doesn't hold water and you should just resolve it on this case. Four minutes and 45 seconds. Go! Thank you. Real quick, Your Honor. What happened in the Shates-Sidney case and the logic of SKF was that they recognized that it's checking the box plus completing the questionnaire. That action together has legal effect just like in litigation. And, Judge Moore, just like in litigation, and I'm not saying the analogy is perfect, but just like in litigation, when a party stands up, two similarly situated parties, one says they object and the other one doesn't say anything, the party who objects is not engaged in abstract expression. Those words have meaning. They have meaning in the context of the litigation. That's what's going on here. There is meaning to these words that isn't in the context of political speech or expression. It's in the context of a long-standing administrative process and words have to have meaning. But what SKF said is it can't just be the expression. It's got to be combined with a follow-through which is completing the questionnaire. Judge Prost, on your question in SKF, the reason why the facts don't matter, there are two things. One, I think we all agree under the Grable decision in the Supreme Court you have to read decisions as a whole. The reason why that's important and why the court in SKF follows its discussion of the facts with the specific litigation analogy is because that was a facial challenge and if the facts actually really made a difference there it would have been more of an as-applied challenge. So when the court goes into the discussion of the facts if you take a look at it the court says, indeed, and then goes on to discuss the facts and then wraps up with the litigation analogy. The reason is is the court was making the point that looking at this as an expression and a conduct that occurs in litigation is consistent with the facts on the ground but it isn't dictated by those facts. Judge Moore, as I move very quickly here, let me go through the three points why I think you can dispense this case quite easily and what I urge the court to do is do it in this way in a way that we can clear the docket of these cases because I think there is a way to reconcile Shea-Sidney and SKF that makes sense and will allow these cases to be resolved. One is that the position taken by the opposing party in this case eviscerates the plain text. Judge Moore, again, your question is right on point. There's no way that supports the petition in the statute can be read to mean oppose the petition. That should be the end of the case. In Shea-Sidney it says this is correct because it is the surrounding circumstances not abstract statements of support alone upon which an appropriate support determination depends. One such important circumstance is whether the producer has participated in the investigation for providing supporting information or argument in a questionnaire response. Your Honor, two points to that. One is our point about the circumstances is specifically the circumstances that occur in litigation and why it's so important that when combined with a completed questionnaire this conduct has meaningful legal consequences both for the Commission's investigation and for the Commerce's department. And you'll see on JA-243 the respondents in this case specifically argued that there was not enough support and therefore the investigation should not go forward. That's part of the answer. When you say they specifically argued there's not enough support you mean they actually, like SKF, involved themselves in the litigation and tried to oppose the government's efforts? Your Honor, when I say respondents I should be more clear. The respondents below, which what I mean is the suppliers. Oh, no, you're not saying they... Not actually. I'm talking about the respondents below which are the suppliers to Ashley. And what they argued was you shouldn't impose any dumping order to continue with the investigation because... What does that have to do with them? Because they did not indicate their support and the number of people that did not indicate support, nine parties and then seven who took no position, that was significant to the Commission's determination as to whether there's injury to the domestic industry or not. The Commission looks at that as a relevant economic factor. If there had been enough parties that had not supported... But that makes it sound like every time I respond to a survey, right? If I respond to a survey you're saying that's not my abstract expression of speech. It's my abstract expression of speech. The fact that the surveyor might take that information and utilize it in some fashion... Your Honor, you're absolutely right if you were responding to a survey outside of the court. But if I was in court and it was a litigation survey being presented to me by the court, or by an adjudicatory process, the survey has meaning relating to that adjudicatory process. We don't have a case that deals squarely with the significance of which box you check. I mean, certainly SKF didn't turn on that and you can read Che Sidney and not necessarily turn on the significance of that. Your Honor, you could but two points to that is that one, again, I think you'd have problems with the text and second, I think you can read Che Sidney the other way because Judge Moore's question, the second... Well, if you were to say checking the box really shouldn't be involved in the Byrd Amendment analysis at all. The check in the box pre-existed Byrd by a long time and it serves a different purpose. And to say when it comes down to trying to figure out who was helpful and who wasn't, who should get some of the Byrd money and shouldn't, then I think one could say, well, I may decide that check in the box is irrelevant. Your Honor... And your adversary here says if you're talking about check in the box, well, you've got a little problem because you are lining them up, for example, with Oakwood and you can't distinguish between them without raising a constitutional problem. Your Honor, I don't think that's right with respect and for two reasons. I guess three reasons. One is I think you can't reconcile it with the text. So if you have a problem that's not rewriting the text... The text meaning that Byrd says you're supposed to support, right? Indicate your support. Exactly. By the questionnaire, right? Exactly, Your Honor. It says support the petition. And Shade Sidney supports that, Your Honor, because the very next sentence from what Judge Moore read said significantly Shade Sidney did not fail to file a response, did not engage in any activity in opposition, and it never expressed that it opposed the petition. In two other places in the opinion, it also specifically indicates that there is action. It never took any activity to oppose the petition, including checking the opposed box. So if you're hinging your answer to Judge Clevenger on the fact that it never expressed that it opposed the petition, I better hear you concede that the next case is significantly different from this one. Your Honor, I'm going to explain to you why that's not, but let me do that in the next case. But if I could, just have one more point to wrap this up, which is that there is the First Amendment concern here, Judge Clevenger. Your point gets to this. SKF resolves this issue, and the question I would ask the court to look at is whether any of the cases they have cited changes the analysis in SKF. Before Shade Sidney came out, of course, the entire case was focused on the question of recent Supreme Court precedent. For reasons set forth in our brief, none of those decisions apply to this circumstance here, and it would be a great extension of those decisions to go ahead and overthrow the statute. Well, I'm not sure that the supposed Ashley-Oakland constitutional problem is exactly the same constitutional problem that we dealt with in SKF. I'm not sure that there is a slightly different twist. Your Honor, what I would say is that the statute that was addressed in SKF and the way that SKF resolved it the way I suggest, which is that this is in litigation, is sufficient to avoid all First Amendment concerns and that there's nothing that they cited that would suggest that there's any additional First Amendment concerns. Well, then, what is exactly your interpretation of the statute so I understand it? My interpretation of the statute in light of SKF is that, A, you have to take initial action by checking the box to indicate that you support, and then you have to perfect that action by completing a questionnaire. If you do not do both of those things, then you have... Now, the one question is what happens in Shake City... Do you read out the letter totally from the Bird Amendment? You can file a letter indicating your support? You could file a letter indicating your support as well. And that would not be enough under SKF? If you did not also take additional action by filling out the questionnaire, right? Well, what happens if you say, I support, you file your answer, you then change your mind, right? What happens if you change your mind to oppose? Your Honor, I think the correct reading of Shake City in that context would depend on the fact but that certainly... No, just a simple fact. You say, you check I support like Shake City did, I file my answer like I'm supposed to, and then I change my mind. And in my final questionnaire I say oppose. Your Honor, I think Shake City would control that which would mean that that would be a situation where at that point you're no longer supporting the petition. If Shake City addressed the unique citizen stance where the party... Well, if Shake City said that, you know, because he said the second iteration doesn't count. It didn't count because what I think it said, Your Honor, was that once we know that it's a supporter, we know it's covered by the statute, the question is when somebody is a supporter and then takes no action to oppose, does that disqualify them? Answer in Shake City, no. Your hypothetical, they took action to oppose, therefore they are disqualified. The ITC has told us that if somebody comes in and says I support and they change their mind and fight you, they would still not have the money. Your Honor... You're being inconsistent I believe because of what the ITC told us. I didn't understand being inconsistent but I would say that I do think that that hypothetical shows why this case is an easy case and if that's a difficult case then you can resolve that one but it's not presented in this case at all. Are you sure?  clarification on your response to Judge Moore when she asked what about sending a letter? It seems to me the statute quite clearly talks about a list, this is under questionnaire response. So are you saying that we shouldn't consider the statute as allowing those alternatives and as a way of indicating support? Your Honor, I think the way that I would read it but you can ask the government in the next case if I've got this wrong is that there are two things that have to happen in SKF. One, you have to indicate your support on the questionnaire and second, you have to provide the data that the government is asking in order to provide further action to perfect it. In terms of that first step, you can do that either by checking the box on the form or by sending a letter. Thank you very much. Mr. Russell, back to you. In order to keep the time in by my count, they went about eight minutes over in total and you had how much time left? Four from thirty-two Your Honor. Okay, so you've got twelve minutes if you really really need it. I'll try not to use it all. In both SKF and Chase Sydney this court recognized that the court's obligation to construe a statute to avoid constitutional problems can sometimes require the court to read the statutory text against the grain. It's absolutely clear from the text of the statute if you read it without any constitutional concerns that sending in a letter in itself is sufficient support under the text of the Byrd Amendment to warrant distribution. Well, it has to be a letter that's supportive. You're sending a letter saying I'm opposing. Could you reply by sending a letter? But my point is simply that this court in SKF said we cannot give that plain language effect because doing so would permit the government to reward abstract speech alone. And it's that because of that we're not going to give that language effect. We're going to say we're going to read support, the word support in the statute to mean practical support. So it's not enough to express abstract support through the letter. You also have to file a questionnaire response. Okay, but we don't have to reach that question of letters and what the meaning of that is. Well, the court already resolved that in SKF. Okay, but it doesn't have any implications for this case? Only for this purpose which is that it demonstrates that this court has recognized you have to read the statute against the grain sometimes in order to avoid a constitutional question. This case and Shea Sidney post the flip side of the constitutional problem of the letter writers which is that if you read the statute to say that you have to express abstract support in order to get to distribution, then you are denying a distribution based on abstract speech alone and that's also a constitutional problem and the way you solve that problem is to read the text of the statute where it says the word support is to mean practical support not abstract support. Practical support by answering the questionnaire and providing valuable information to the problem. That just makes no sense because the statute says that indicate supportive petition by letter. So if I say practical support, how do you practically support by letter? Because the court read that to mean you do it by letter and by following the questionnaire response. Now it concededly against the grain of the text but sometimes the court has to do that. No, sometimes the court  But the court gave it that construction under SKF because... The court gave it that construction in SKF which is the important point. Where? In the footnote. So the court gave a construction totally at odds with the language of the statute in a footnote? Yes. Not the one you're proposing. No, but what I'm saying... It's a matter of being bound by our precedent. No. The statute defines us to read the statute as to how you're proposing we read it. We're not saying that SKF controls this case but what I am saying... Footnote 26 is what we're talking about? Yes. Your example was we read that as sort of glossing over the statute so since SKF passed the court glossed over the statute in one respect this court has leeway to gloss over the statute in other respects. What I'm saying... Footnote 26 dictum was the question of whether or not SKF had supported or not supported an issue in that case? No. The only question is... Was it conceded that they had not supported, they had objected vociferously? That's right. So it's totally a question of what constitutes support dictum? I don't think... Unnecessary to the decision isn't it? It wasn't because the court was trying to explain how the statute would be constitutional if understood the way the government understood it and in order to do that they had to construe the word support to mean not simply abstract support. And the court made the same interpretive move in Chase Sydney where it said support means filing out the questionnaire. Now with respect to the first amendment problem here, so just to be clear, the only reason that Ashley didn't get a chance to  the  was that the government can't bootstrap its way out of the first amendment problem by acting on the basis of what people say about an issue of public control. So you're telling us there is a real serious first amendment problem. And then you're telling us there's one way to get out of it. Let's assume we reject your one way to get out of it. What's the practical implication? Everybody goes down and the money goes back to the U.S. Treasury? No, I think what would happen is what the trial court did in the initial instance when it found the support requirement unconstitutional and said distributions are available to anybody who follows a questionnaire response. And I think that's an appropriate resolution. How is it that distributions are available to anyone who follows a questionnaire response? You win either way. If that section of the statute is unconstitutional, what in the statute guarantees that everyone who follows a questionnaire response gets money? It's what's being severed is the question. The central section of the statute is unconstitutional but that doesn't affect the distribution? Yes, I think that's right. Nobody's briefed this question. Can I say a couple more things about the government's argument that this is a   that they are not doing the same for all purposes as an opposed answer to the question. In both instances the ITC takes that as weighing against the finding. Let me correct what's been said about that. Commerce, not the ITC, makes the 50% determination. They don't do it by relying on the ITC questionnaire. They conduct their own polling. It's a red herring for anybody to suggest we're disentitled to a distribution because what we said affected the 50% determination which took place after. There are two purposes for two different questions. Commerce asks a support question to determine whether it's a 50% threshold. They do that through their own poll. ITC looks at the answers to determine whether there's been a material injury. The government has said that a take no position answer has the same effect as an opposed answer. If that's the case, there isn't any reason for purposes of statutory construction to expect that Congress would have treated somebody like this  a disincentive to garble the data by providing a financial disincentive. If this section is unconstitutional and we sever out the unconstitutional part, you realize what's left is a list of petitioners. That's what's left. I don't know why you think you're not a petitioner, right? These only people are going to get money. A list of petitioners and persons and a list of persons that indicate support for the petition. If we take out the list of persons that indicate support, only people left under affected domestic producers are petitioners. That demonstrates the desirability of adopting a construction that avoids that outcome. That's the next case. This court said sometimes you have to do this. I don't think it's an untenable interpretation of the  support to mean active support and not simply abstract support. Support creates a very serious First Amendment question. Filing a question is  very serious question. It doesn't include checking boxes. It is an inactive expression of speech. That's our view. You have to convince us of that. I think that's right. The core question is can Congress make availability of a significant government benefit turn on an expression of abstract speech. Can they draw the line between you and Oakwood? Yes. Can they draw that line? I agree that that is the bottom line. I think that is  bottom line. Can Congress   of a significant government benefit turn on an expression of abstract speech? Yes. Can Congress make availability